May it please the court, I'm Martin Crowley, and I've been asked by Mr. Dickerson, who could not be here today, to argue our case. And I would reserve a portion of my time for rebuttal if I may. I'm not very friendly with technology, I guess, because this morning I got up and weather.com says it wasn't supposed to be raining, the rain was supposed to have stopped, and the first thing that happens is I get out and it's pouring on me when I'm going to my car. The second thing that happened is my GPS failed. It glitched. And so I couldn't direct myself down from where I was at to the courthouse, and I had to rely on the old-fashioned paper map to find my way here. I saw a clip of a movie recently that intrigued me. It was called The Battle of Athens. And we're not talking about the firebombing that's going on in Athens, Greece, this morning. This is a small town in Athens, Tennessee, in rural McMinn County in 1946. The G.I.s had returned from World War II, had found their county government was corrupted by a sheriff and a state senator. Election fraud was alleged to have occurred for some years. Appeals to the government were ignored. The G.I.s were determined to restore voter confidence by running for public office themselves and promising fraud-free elections. They petitioned the federal government to supply election monitors but received no response. On election day, the sheriff brought in 200 armed deputies and occupied the voting places in violation of state law and seized the ballot boxes and took them to the jail for counting, again in violation of state law. The G.I.s borrowed what weapons they could from the National and State Guard armories and descended on the jail to retrieve the ballot boxes so the votes could be counted in public as the law requires. Many shots were fired from inside and outside of the jail. Some were wounded. On a call from the sheriff, the State Guard was mobilized but it never went to Athens. Around 2 a.m., the G.I.s threw sticks of dynamite at the front porch of the jail. This caused the deputies to surrender. When the ballots were counted, the G.I.s sheriff candidate Knox Henry won. The rule of law was restored to McMinn County, Tennessee. Some of us watch in awe at the election protests amid political turmoil in the Mideast that often result in violence and death. These people just want free elections that they can have faith in. In Egypt, it appears that they will advance the presidential elections due to the protests. Even in Russia, former Soviet leader Mikhail Gorbachev called for new parliamentary elections recently due to widespread voter fraud. Counsel, I'd like to ask a direct question about the statute in this case that we're looking at, which is obviously, as you're recounting, a method that Congress has chosen to ensure proper voting in certain respects. The statute, section 15481, refers to requirements in a voting system, quote, used in an election for federal office, end quote. And it's my understanding from the complaint that this was an election not for federal office but rather for state office. Do I correctly understand the complaint? And if so, what does that phrase mean for your lawsuit? Well, and I pondered that myself in the past, Judge Graber, but the problem is in Nevada. First answer the question. Okay. Were you a candidate for state office, not federal office? Yes. Okay. And the problem is in Nevada, we're forced to vote on the same machines. Everyone votes on the same machines, whether it's Congress, President of the United States, or County Justice of the Peace. Right, but the question is the reach of the statute is does this protect, is it intended to protect, which is one of the many factors to consider in whether there's a private right of action. Is Congress intending to protect the class of persons who are running for state and local office as distinct from federal office? I would hope so, since we're forced to use those machines. Well, hope and policy are one thing. The language of the statute and what Congress had in mind is something else. So what did Congress have in mind? There's nothing mentioned in the congressional minutes of the statutes or anywhere that I can find that references, oh, and by the way, the people who have to vote on these machines for state offices, you're not affected by this. But Nevada is not prevented from having any system it wants as long as it meets the minimum standards. In fact, my understanding is that Nevada does have more paper trail than the Federal Government requires. Correct, Judge, and that's why I pointed out so clearly in our briefs that Nevada in its statutes and the state plan pronounced emphatically that Nevada would follow the concepts and the law of the Help America Voter Act. That's throughout Nevada law. And so when you say you're going to follow the Help America Vote Act and you pronounce that in the statutes and the law, I think you have to follow it. And I think when you don't follow it, you've violated somebody's rights. But my understanding of the way the statute is set up is that there's a separate set of requirements that go to the use of Federal money. But that's not why you're relying here. You're relying on 301, which is not contingent on Federal money at all. No, well, 301 just comes into play as part of the Help America Vote Act. The money came to buy all of these machines. Nevada was given $25 million to buy voting machines, and they bought these touchscreen voting machines with the paper trails attached. But the paper trails were not required by the Federal statute. It doesn't say that they're required by it, but it certainly makes a reference to it, as you can see in the statute. It says the permanent paper record that is associated with those machines must be used in any recount. But, see, the problem is, see, in Nevada, they did put printer machines on those. It's not a question of, like we're in one of the other states that doesn't have the printers on them. But the reason why the other states don't have it is because the Federal statute doesn't require it. Well, Nevada law does. I mean, Nevada law in a State plan says that they'll all have voter-verified paper audit trails attached to the machines. It says it right in our statute. But the violation of a State statute does not equate to a Federal Section 1983 claim automatically. Isn't that correct? Well, not automatically, but due process of law under the Fourteenth Amendment and equal protection would come into play. If you're going to say we're using the Federal law as our guideline. No, no, no. Let me make you said that the violation here was of a State statute that required Procedure X. And if your complaint is the State did not follow Procedure X under State law for me, who was running for a State office, why is that a Federal claim? Well, going back to what we just talked about, that the State got money from the Federal government and in return promised that they would follow the conditions of HAVA, which says that if you use a voter-verified paper audit trail in any recount of an election using that audit trail, the paper record referred to in Subsection A must be used, shall be used. And they don't follow that in Nevada. They just want to be able to do it however they want to with this printing of the ballots in the dark of night. I'm confused about what you're saying. Where the voter-verified, et cetera, is not, that phrase is not used in the statute. So where are you getting that requirement from? The voter-verified. You're talking about the permit the voter to verify the vote selected by the voter in the ballot before the ballot is cast? Is that what you're talking about? Where is the requirement that you're talking about? In 301 or is it somewhere else? 301. All right. Where in 301 is it? I'll pull that up when I'm listening to counsel. I can certainly refer to it. It's in my briefs. I cited it in entirety and even highlighted it. Mr. Crowley, I'm looking at Section 15511, which basically is the portion of the law that essentially directs the Attorney General to seek declaratory and injunctive relief if the Attorney General finds discrimination in the election technology and administration requirements under, among others, Section 301. It doesn't say anything at all about actions brought by private individuals. You would agree that it clearly directs the Attorney General and empowers the Department of Justice to bring such actions. Yes, it empowers them to do that. But just as they're not going to go and do anything and help anybody in McMinn County, Tennessee, they're not going to come to Churchill County, Nevada. They're going to ignore us because we're only 25,000 people. We're not Las Vegas. We're not San Francisco. That's not the issue. The question I'm really posing to you is it's clear that the Attorney General has the authority to seek relief if the Department decides that it wants to devote its resources to Churchill County. The question is where in Federal law can we find an express right of action in an individual to permit you to bring a Federal action for breach of 301? There's nothing in the statute that expressly provides an individual a right to advocate their rights. I would submit that under Section 1983, where it says that your rights under the United States and the laws of the United States and the Constitution are enforceable under Section 1983. And just like I was arguing earlier. But that begs the question to a certain extent because, I mean, we have the Gonzaga case that basically says we have to be very careful about implying individual rights of action in the absence of express congressional directive. And I think what you're arguing is because of the fact that you claim a breach of Nevada state law, that that somehow serves as the predicate to bring a Federal Section 1983 action because you allege that the breach of your state statutory rights amounts to a deprivation of due process and equal protection. Is that do I understand the theory of your complaint? Well, not entirely, because like I said, the state law and the Federal law are intertwined. When Nevada adopted the Federal law, the Federal law is the one that we rely upon in this case. It's the one that gives us the right to count those. But I'm back to the same concern I have under the Gonzaga line of cases. And I think there's another one, is it Blessing, that also speaks to this issue as well, in order to try and determine when an individual right of action arises under Section 1983 that is cognizable in Federal court for, in this case, the breach of Section 301, as you claim, in the manner in which Nevada has implemented the election technology. Right. But, Judge Tallman, if we get lost in the language of the statutes in these cases, then we're missing the fundamental question here. Do I have a right to have my vote counted? As a citizen of the United States, do I have a right to have it counted, or does it matter? I don't think that's the issue. I think that the claim you are making is that the county has not complied with Section 301 in the manner in which it has selected the equipment and in the way that the equipment tracks voting. And that clearly falls within the authority of the Attorney General under 15511. But I'm struggling to find where there's an individual right to enforce that particular kind of a violation. I just don't see it in the statute. I think you're missing what we're arguing. We're not saying that the Nevada law is wrong or backward or anything like that. It's the way that they went about doing it. I mean, the law says do this, this, this, and this. This was all about the 2006 election, right? But you're asking for future relief? What are you asking for, in fact? Yes. We would like an order that says that you have to follow some specified guidelines when you do – I mean, the law says you have to do certain things when you have a recount, when you have an election. Ballots have to be counted. There has to be some – Between as an individual, as a voter, or as a candidate, or both? Well, both. My rights as a voter are impinged if my vote isn't counted, even if I'm the one running for office. But what they did in Nevada is so fundamentally – if this happened in Las Vegas in November of 2012 and there were 500,000 votes at issue and there was a separation of 26 votes between the Republican and Democratic candidate, this would be national and international news if they went to go print these ballots in the dark of night at the court clerk's office in the evening and over the weekend and then parade those out in front of the public on recount day and say, we're going to count these ballots. Well, I mean, I'm not suggesting in my questioning that the voters of Churchill County are less important than the voters of Clark County. The question that we have to answer is whether even in your hypothetical we would find an individual right of action implied somewhere in this federal statute, which you haven't been able to point to any other provision, that would give a Clark County voter the right to bring the same kind of claim that you want to bring in Churchill County. Well, isn't that the issue that we have to decide? But a recount – how are we going to conduct a recount? How do we know that the vote is counted unless we conduct a recount fairly? That goes to due process and equal protection. If the recount is conducted in such a fashion as to completely disregard any fundamental aspects of due process, you can't say that our votes were counted. But your – I mean, it is pretty peculiar to have a recount which consists of simply printing out what is already in the computer when the issue is whether what went into the computer was proper to begin with. But I'm having – aside from the private cause of action problem or 1983 question, I'm not understanding what it is in 301 that you're relying on. I mean, it does say that the voting system shall provide the voter with an opportunity to challenge the ballot or correct any error before the permanent paper record is produced. You're not complaining about that, right? No. It says the voting system shall produce a permanent paper record with a manual audit capacity for the voting system. Are you complaining about that? No. That's there, and then you go down to the one below. The paper record produced under subpart shall be available as an official record for any recount conducted. So you're claiming that the printout that is at the ballot place that the voters can look at is what has to be counted? Yes. But no State but Nevada has that. That's just a matter of State law that even exists. Well, I would argue that if they're going to attach those things on there and the voter verifies those ballots, then those are the ones that have to be used. And this is the way it was sold to us in Nevada. This is the way the Secretary of State, Dean Heller, sold it to us. He told us. He told us. And this is from MSNBC.com. Counselor, you have exceeded your time, and I think you might want a little bit of time for rebuttal, which I'll restore to you. Okay. Thank you. We'll hear from the other side. Thank you, Your Honor. May it please the Court. My name is Doug Rands. I represent the Churchill County clerk in this matter. I'm going to be taking part of the time and then reserve some of the time for my co-counsel. We're going to be splitting our time. As the Court has aptly pointed out, this is a matter involving election in Churchill County. Mr. Crowley was talking a little bit about the declaratory relief, and the Court brought up, what is he actually asking for this? I believe the declaratory relief portion of this case was disposed of by the district court judge in the motion to dismiss, where he said, under Section 15511, that the Attorney General is the one with responsibility for any violations of the Help America to Vote Act. Is that your position with regard to all of 301? Is that my position regarding all of 301? That was my position in the motion to dismiss. The Court found that there was a possibility of a private right of action under Section 1983 on two of the claims, but the two claims that involved declaratory relief, he found in the motion to dismiss, that those were not, did not have a private right of action and therefore gave us our motion to dismiss, which, as this Court is aware, is not before the Court now. The only thing that was appealed was the motion for summary judgment, which was subsequent to our motion to dismiss. And what claims? I'm confused. There were different claims that are? There were five claims of action in the original complaint. Claim 1 and 3, 1 and 4. I thought there were six. Six, yes. There was declaratory judgment for the HABA violations. There was a Section 1983 claim of Federal voting rights, Section 1983 due process, declaratory judgment for appointment of an overseer, First Amendment, and a declaratory judgment that the Secretary of State didn't comply with the HABA certification. The Court is correct. He dismissed Section Claim 1 and 4, the declaratory relief claims. He left the other. And as to my county or as to my client, he dismissed Claim No. 6 because that was against the State of Nevada and not against my client. So they were allowed to proceed on the three claims. The first, but the ones regarding declaratory relief were dismissed under the motion to dismiss, which is not before this Court on the, on his notice of appeal. He only appealed the summary judgment claims. Which was Claims 2, 3, and 5. 2, 3, and 5, the First Amendment, the HABA claim, and the claim for. So he's appealing primarily Claim 2, it seems like, which is the. Correct, Your Honor. The claim involving destruction of ballots, there was absolutely no evidence in the Court below of that. And the Court, in his order granting summary judgments, affirmed that there was no evidence that there was destruction of these ballots. And so that claim was dismissed. I don't believe is really before the Court.  It's not a claim for declaratory relief? It's not a claim for declaratory relief. What's it a claim for? I don't know. It's a Section 1983 claim, which presumably results in damages if successful, but. But what are the damages? The person who won the election has been seated for three years now as the Justice of the Peace. I don't think we can go back and say that he's going to be awarded the seat. And there's no reason for that. I mean, there was no evidence that there was any irregularities in the voting process or in the process of counting. The ultimate claim for relief is for declaratory judgment as to those matters set forth here in the above, for finding violations of rights. I don't know. It seems to me the whole thing is a claim for declaratory relief. One of them seemed to be directly under the statute, and one seems to be under 1983. So I don't see the problem. The other is that it's not a private right of action under HOVA, which in our opinion was disposed of by the Court at the motion to dismiss, that he dismissed the declaratory relief section saying there was not a private right of action under HOVA. Okay. But what about 1983? 15-511. What about 1983? The 1983 claims were essentially the claim that we failed to properly do accomplish the recount under Nevada statute. As we've discussed in our briefing and here today, or not here today yet, but NRS 293b.400 is the section that requires the recount section. Well, let's assume that there is a claim for prospective relief here someplace. Okay. Let's just go into the details of what his claim is, that we violated HOVA because we didn't use the VVPAT in the recount. Right. NRS 293b. And aren't going to do it in the future is my understanding. Until we're told differently. Otherwise it would be a mootness problem. Until we're told differently, yes. We're going to continue to do it the way we're doing it now. And NRS 293b.400 discusses how to use the paper recount. And I think the pertinent section, portion of that State law section, is that in carrying out the requirements of the section, the county or city clerk shall print out only those records required for the recount of the contest. Now, if if the All right. But he's basing his claim on, I mean, he should be basing his claim on HOVA and not on State law. He seems a little, to be wandering around about that. But let's take the actual, the only possible source of the, in HOVA of this claim is 301. Well, you can tell me whether there's any other source, but 301. It's essentially section 15481. Yes. Or 301. That's fine. Sub 2. Yes, I'm aware of that. So let's go on, okay? And what does it mean to produce a permanent paper record with a manual audit capacity? I gather that Nevada is actually not doing that. Nevada has the VVPAT, they call it. That's the little sheet of paper that rolls up on your vote. They do have that. The audit capacity used for recount, and my colleague can address this also. He's actually representing the State of Nevada. But Nevada uses those printouts of the actual voting in the recount. To use the VVPAT would be horrendous. I mean, let's stay in Clark County. I guess Nevada, does Nevada, excuse me. Does Nevada print out, I mean, it's a very strange provision. But does Nevada actually create a permanent paper record for every election? Probably not. Only if its recount is ordered. Okay. But it doesn't say that. But the permanent paper. Just a minute. I'm sorry. Sorry, Your Honor. It says you're supposed to produce a permanent paper record, right? It doesn't say only if there's a, it says with a capacity for an audit, but it doesn't say only if there's an audit or question. But I gather that Nevada at some point decided this is ridiculous, it takes us two weeks to print this stuff out, we're not going to do it. Is that right? I would have to defer to my colleague. He represents the attorney, or the State in this matter. But it would seem reasonable that there would be, how many, half a million papers, a third of a million anyway papers in Clark County alone in most elections. So is your position that, it then goes on to say the voting system shall provide the voter with an opportunity to change the ballot. And then the, is your position that that's not enforceable until 1983? What if some voter came in and said they didn't give me a chance to correct the ballot and I want to sue over that? If an individual voter did that, I guess he would have an individual right to do that. Until 1983. Until 1983. So it's the fact that this is not directed, that the particular problem, which is whether or not there is a permanent paper record with a manual audit capacity is not directed at a particular individual? Excuse me? The fact that the precise requirements here, which are, I guess, B-1 and 3, don't talk in terms of any individual right. They don't talk of any individual, correct, Your Honor, or any individual method. What about the fact that this only doesn't talk about a Federal, that he was not a candidate for a Federal election? I believe that would probably dispose of his claims out of hand. Would you want to cede time for your colleague? I will cede the rest of the time to my colleague. May it please the Court. I'm Wayne Howell from the Attorney General's Office here for the State of Nevada and the Secretary of State. And perhaps I can offer just a few answers. The provision in the statute that requires printing only for recounts is 293-400. And that is the statutory – I'm sorry, 293B-400. That is the provision that describes the permanent paper record. That's – you're talking about a State statute now, right? Yes, I'm sorry. Right. But how can you have a permanent paper record that's not a permanent paper record? You're saying you're not going to have a permanent paper record. I don't know why they want a permanent paper record, but the statute says you're supposed to produce a permanent paper record. And the statutes also refer to the VPAT. Can I use the shorthand for the Voter Verified Paper Authority? Which statute are you talking about, the State or the Federal? That is Nevada Statute 293B-084. And that describes the VPAT. And that is the spooled paper. And Nevada does produce a VPAT. And it's printed at the time of the vote. And that is something that the voter can look at to see a physical – But your position is that that's not a permanent paper record with manual audit capacity because you're saying that, in fact, you couldn't really audit it. It would be inaccurate. My position is that's not the permanent paper record that's used in a recount. All right. So what is one? There isn't one. It's the one described in 293B-400. The one that doesn't exist unless there's a request for an audit. That's correct. It's not a contemporary paper record. And that's where Mr. Cowley's argument fails to distinguish between the two. There's such thing as a permanent paper record. There's also a permanent contemporary paper record. And we don't do that. That's not produced in Nevada. And we don't have to. HAVA doesn't require it. The Help America Vote Act doesn't require a contemporary paper record. Aren't you really arguing that there's missing wording from the Federal statute that Roman numeret I in 15481 should actually read, the voting system shall have the capacity to produce a permanent paper record? Because your argument is our system has that capacity. Yes. But we don't interpret this Federal statute to require that it be contemporaneously printed on the day of the election. That's correct. Not the permanent paper record. How does that square with the last subparagraph of audit capacity in the Federal statute, which says that the paper record produced under subparagraph A shall be available as an official record for any recount? And I'll leave out the end of the sentence. Yes. If it's not done contemporaneously in time for the recount, how can it be available as an official record for the recount? That section is describing the audit trail. And that is our VPAT. I understand that. I'm talking about a timing question. If the Federal statute says, I'm assuming for the sake of this question that this is something that can be raised by an individual, but if the statute says the paper record shall be available as the official record for the recount, but it isn't actually done in time for the recount, how does it follow the statute? Because there are two different concepts, two different things we're talking about. One is the permanent paper audit trail. And that is contemporaneously produced. But that's not the permanent record used for counting a recount. But an audit trail is, it's very mysterious. I mean, an audit is not a recount. Is that what you're saying? That's correct. Those are two different things. Well, but the part I'm reading doesn't refer to an audit. It refers to the paper record shall be available as an official record for any recount. Yes, Your Honor. It doesn't say anything about audit ads. It says shall be available. Right. It does not say shall be used. It does not say shall be used. Well, was it available for the recount? And it is available. Was it in time for the actual recount? Was it available for the recount? It was available. Had Nevada chosen to use it, it could have. What's the it? Is the it the print? Just a minute. Is the it the printouts that came? Yes. Well, that wasn't available only because you chose not to use it. Correct. It didn't exist. It didn't exist. So you regard those VPATs as the permanent paper record, but you also say that they're inaccurate and can't. Well, then what's available about them if they can't be used for the recount because they're inaccurate? Well, they're available in keeping with the Federal statutory requirement, but that's all. And Nevada. But they're not available. I mean, they're available, but inaccurate. They can't be counted on and we couldn't use them. What makes them available? They could have been used, Your Honor. They couldn't have been used. They could have been used. Could have been used. Yes, they could have been. But if you used them, you'd get the wrong answer. No, no, no. We don't use them because it's an impracticability. Because these things are on a spool. It's like the old cashier tape. And you say because they're often jammed and they can't be counted on and so on. And we have early voting in Nevada that allows for out-of-precinct voting. So if we were to recount from the spooled paper P-PAM, it would have taken weeks. But what you're really doing then is the recount is complete phony, right? Because all you're doing is printing out what's on the computer and counting what you just printed out. And there's no chance that they're not going to match. I mean, if you have a whole bunch of you have a computer hard drive and it has a whole bunch of records on there and then you're counting what you just. So what the computers can do is count. I respectfully disagree because we're using manual recount for a recount, whereas the normal count is electronic. So all you're figuring out is whether the computer knows how to count, as opposed to whether the computer actually recorded the votes that people voted. So all you're figuring out is whether the computer knows how to count. We're checking the tallies by manual recount. You're finding out whether the computer knows how to count. But we also audit every election and do a sampling with the voter-verified paper audit trail. And we do that through that, now I need water, 2 or 3 percent of the precincts to make sure that they're actually being recorded properly. And the audit provisions are in our regulations. We call it Nevada Administrative Code. Those are our regulations correlated with the Chapter 293.255. And this provides for auditing all elections. And they use the VPAT to do that, but it's a sampling. It's not the entire, every ballot cast. That's what recounting involves. You have to count every ballot. It's not a sampling. And so that's practical. That can be done. Kagan. But let's go back, if we may, to the fact that this whole statute is begun with each voting system using an election for Federal office shall meet the following requirements. This wasn't a Federal office. How does the statute apply to this election? In this case, 293. That's your statute. No, I'm sorry. He's suing on HABA. I'm going to tell you where HABA is in the Nevada statute. HABA's not in the Nevada statute. It's in the Federal. Well, it's referenced. My apologies. I just want to make sure I identify it correctly. 46, 293.4685 says that the Secretary of State, sub 1D, shall adopt any regulations which are necessary to comply with the provisions of HABA. And I'm not going to quote. Well, that's not the question. The question is what is your position on whether the Federal statute applies to an office that is not a Federal office? Is it your position that it applies or does not apply? It does, to the extent not in conflict with our statutes. Okay. Thank you. Thank you very much. You've exceeded your time. Mr. Crowley, you also exceeded yours, but we'll give you two minutes for rebuttal since we used a lot of it for questions. Just briefly, both counsels mentioned NRS 293B.400. And I pointed to address that in the briefs we covered, that that statute was amended last in 2003 before we even had these machines. So to say that that's the statute that applies to the use of these machines is really not very fair because these machines weren't even in use in 2003. They came into use in 2004. And on that point, on September 7, 2004, MSNBC.com reported Secretary of State Dean Heller as saying this, that many voters were very vocal in their concerns about paperless electronic voting. But we're happy to learn that in Nevada's system, quote, paper records will be kept in county election offices for 22 months and used in case of a recount, end quote. Well, that's not the way they're doing it. That's the way that was presented to us in 2004. But then in 2006, they're not using those paper, voter verified paper audit trials. Voter rights groups praised, in that same article, they praised Nevada for their system because you're going to keep those papers and they're going to be available in a recount. So everybody said Nevada's got it right. But when it came down to it, the first opportunity to use those things, they didn't use them and they refused to use them. Instead, they did this charade where they printed these things and they called them ballots. They go from a cartridge into some reader, which goes to a computer, which goes to a Word document, and then goes to a printer. And then it's printed out on normal sheets of paper, just regular sheets of paper. And then they're stacked out 13,000 sheets of paper. But that does avoid the problem, doesn't it, Mr. Crowley, of having the continuous spool. And if that spool gets jammed, there would be no way to use that contemporaneous printout for an audit because you'd have multiple ballots printed on the same place on the spool. Whereas the way they do it actually looks at each electronic vote, prints out, in essence, a paper copy of the electronic vote. And then that paper copy can be manually counted to verify that the machine electronic count tally was correct. That's what they're doing. But then you're just going back to what Judge Berzon was saying. You're just seeing if the computer can count. You're printing out that digital file that's on that digital cartridge, a piece of paper. But the voter gets a receipt. Does he not when he casts his ballot if he wants to? No, you get a receipt that just simply says that you voted. The paper thing stays within a locked printer thing. And I think that the thing about the jamming is a red herring, Your Honor, because the fact that I've voted on these things a few times now since 2004, and they print out. And you can see that thing print. And if that thing jams, you know what it is. But isn't the bigger problem that Nevada is in the vanguard here and that the statute does not seem to require that? I don't know what the statute does require, but it does not seem to require this feedback. Nevada does it, but the statute doesn't require it, does it? Well, I think that's a question for you to decide because it says that there has to be a paper audit trail. And then it says the paper audit trail, the permanent paper record. They don't call it the audit trail. They call it the permanent paper record in the HAVA. And then it says that permanent paper record is the one that shall be used in a recount. So I don't know what the state and the county have continually said our permanent paper record is the one that doesn't exist yet. But if we hit the button in print, there's a record there. But that's a red herring. Counsel, we've well exceeded your extra time, and I think we understand your position on the case. The case just argued is submitted with our thanks. And we will stand adjourned for this morning's session.
judges: Graber, Berzon, Tallman